IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MICHAEL ZANZARELLA, *et. al*, ) | |
| ) | Case No.    24-239L |
| *Plaintiffs*, ) | |
| ) | Judge:    David A. Tapp |
| v. ) | |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| *Defendant*. ) | |
| _____) | |

**PLAINTIFFS' MOTION FOR CLARIFICATION**

Plaintiffs respectfully request clarification from the Court regarding a particular aspect of its December 15, 2025, ruling on the parties' cross-motions for summary judgment. ECF No. 56. Specifically, Plaintiffs request clarification of the Court's ruling regarding the "centerline presumption" issue to determine whether the Court's ruling either (1) effectively reserves for trial the issue of ownership in the former railroad corridor for the 15 Plaintiffs who did not prevail on the centerline presumption issue but prevailed on the fee versus easement issue, or (2) results in a dismissal of those 15 Plaintiffs' claims.

**Background**

On February 15, 2024, Plaintiffs filed a Complaint that alleged the government is liable for a taking of their property in Dutchess and Putnam Counties, New York, arising out of a rails-to-trails conversion authorized by the United States Surface Transportation Board in a Notice of Interim Trail Use on February 8, 2024. ECF No. 1. On June 6, 2024, this Court ordered fact and expert discovery to be completed by January 10, 2025 (June 6, 2024 docket text order), which ultimately was extended to March 28, 2025 (ECF No. 30). Both parties were able to complete discovery by March 28, 2025, including submitting expert appraisal reports for all 79 Plaintiffs

1

and their 84 parcels (while contemporaneously accomplishing the same in *Snee et al v. United States*, Case No. 24-199, concerning the same rail-to-trail conversion).

On May 30, 2025, Plaintiffs filed their motion for partial summary judgment on liability. ECF No. 38. Attached to this motion were 159 exhibits, including numerous subparts. These exhibits included, for each of the 79 Plaintiffs and their 84 parcels, their present ownership deeds, tax assessor information, and maps showing their properties. On July 14, 2025, the government filed its cross-motion for summary judgment and its opposition to Plaintiffs' motion for summary judgment. ECF No. 43. On August 11, 2025, Plaintiffs filed their reply and response brief. ECF No. 46. On August 25, 2025, the government filed its reply brief. ECF No. 47.

On December 15, 2025, the Court issued its summary judgment ruling. ECF No. 56. The Court concluded, *inter alia*, that "where the [Plaintiff's ownership] deed lacks clear limiting language, the centerline presumption remains intact; conversely, where such limiting language is present, the presumption is rebutted. Therefore, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** both the Plaintiffs' and Defendant's motions for partial summary judgment as to the centerline presumption in accordance with the chart below:" *Id.* at 19 (bold in original).

The chart provided by the Court has a column entitled, "Centerline Presumption: Ruling," and then for each Plaintiff, it states that the presumption either "Applies" or is "Rebutted, does not apply." *Id.* at 20-48. The chart indicates that the Court ruled that the centerline presumption "Applies" for 48 Plaintiffs and was "Rebutted, does not apply" for 30 Plaintiffs.[1] *Id.* Out of the 30 Plaintiffs where the centerline presumption was rebutted and does not apply, half of those Plaintiffs (15) also prevailed on the fee versus easement issue, but half of those Plaintiffs (15) did not prevail

---

[1] The Court did not issue a ruling regarding the centerline presumption as applied to Plaintiff Van Vlack, as the column for a ruling was left blank. ECF No. 56, at 24. Plaintiffs also request clarification from the Court regarding its ruling for Van Vlack.

on the fee versus easement issue.[2] Obviously, the 15 Plaintiffs who did not prevail on the fee versus easement issue and also did not prevail on the centerline presumption issue are not proceeding to trial. However, Plaintiffs are uncertain whether it is the Court's intent to have the 15 Plaintiffs[3] who prevailed on the fee versus easement issue but did not prevail on the centerline presumption issue proceed to trial.

The answer to this question will guide how Plaintiffs proceed. If the Court intends for the 15 Plaintiffs to proceed to trial, then Plaintiffs will simply gather and present their chains of title at trial. On the other hand, if the Court intends that the 15 Plaintiffs be dismissed, then Plaintiffs, although they will still gather the chains of title, will file a motion for reconsideration that includes the centerline presumption issue. For the sake of transparency, Plaintiffs' basis for reconsideration will also include an argument that language in certain Plaintiffs' ownership deeds not previously identified by the parties establishes that Plaintiffs have an ownership interest in the former railroad corridor. While all the Plaintiffs' ownership deeds were presented to the Court as exhibits to Plaintiffs' summary judgment motion, Plaintiffs, through an oversight, did not point out the following language, which appears in all of the 15 Plaintiffs' deeds: "TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof." *See, e.g.,* Pls.' Exhibit 48 at 4 (DeBonis).

---

[2] Out of the 48 Plaintiffs where the centerline presumption was held to apply, 26 of those Plaintiffs also prevailed on the fee versus easement question and will proceed to trial, while 22 of those Plaintiffs did not prevail on the fee versus easement question and so will not proceed to trial.

[3] The 15 Plaintiffs who prevailed on the fee versus easement issue but did not prevail on the centerline presumption issue are: Firas Abbasi, James & Jean DeBonis, Robert & Elisa DeWitt, Arlene G. Durk, Scott & Diane Ferris, Kane 2018 Irrevocable Trust c/o Joette Forsblom Fero, David Kuran, Monroe Trust c/o Richard E. Monroe, Catherine F. Oken, Anthony M. Ott III & Tracy Ott, Jason Payne, Jessica & Daniel Schleicher, Richard E. Tivnan, Judith Valentino (claims 85a and 85b), and Michael Zanzarella.

This language was not included in the government's table summary of pertinent language concerning the centerline analysis. ECF No. 43-1, Def.'s Exhibit 1.

Because the issue of chains of title and reserving ownership issues for trial are central to these questions, Plaintiffs now provide the Court with further information and background.

**Chains Of Title**

In the dispositive motion briefing in the present case, Plaintiffs did not provide chains of title in support of their position that they own land in the former railroad corridor. The two primary reasons are: (1) Plaintiffs' counsel's experience in rails-to-trails cases before the CFC, including conclusions reached by various judges in the CFC over the history of rails-to-trails litigation; and (2) the cost to the taxpayers outweighed the benefit this evidence provided at the summary judgment stage.

Plaintiffs' decision not to obtain chains of title until a ruling on the centerline presumption was guided and heavily influenced by their experience in rails-to-trails cases before the CFC. These rulings have been practical and economical, generally allowing chain of title evidence to be submitted after a ruling on the centerline presumption is made.

In *Haggart v. United States*, a rails-to-trails case, in a section of the opinion entitled, "Must the plaintiffs present chain of title evidence?", the CFC answered that question in the negative, stating that "plaintiffs must only present the original deeds granting a right-of-way to the predecessor railroad and the deeds that show plaintiffs owned the property abutting the right of way at the time the NITU was issued." 108 Fed. Cl. 70, 84 (2012). Where the plaintiffs did not prevail on the centerline presumption, Judge Lettow held that the "ownership issue [was] … reserved for trial." *Id.* at 84-85; *accord Geneva Rock Products, Inc. v. United States*, 107 Fed. Cl.

166, 174 (2012) (issue of ownership of parcel would require chain of title evidence, which the court reserved for trial.)

In *Castillo v. United States*, the CFC, in its initial summary judgment opinion, ruled against plaintiff landowners in a rails-to-trails case regarding the centerline presumption, holding it was rebutted or inapplicable. 138 Fed. Cl. 707, 742 (2018). The plaintiffs then "filed motions for reconsideration trying to rely on additional evidence including, in relevant part, chains of title …, which had not been previously submitted to the court prior to the decision on the earlier cross-motions for partial summary judgment, for which reason the motions for reconsideration were denied." *Castillo v. United States*, 166 Fed. Cl. 299, 306 (2023), citing *Castillo v. United States*, 140 Fed. Cl. 598, 606 (2018). On appeal, the Federal Circuit reversed, holding that the CFC had erroneously applied the centerline presumption. *Castillo v. United States*, 952 F.3d 1311, 1315 (Fed. Cir. 2020). In doing so, the Federal Circuit itself reviewed and relied upon the chain of title evidence that the plaintiffs submitted, thus rejecting the government's argument that the CFC was correct to not allow the chain of title evidence upon a motion for reconsideration. *Id.* at 1321-1324; *see also* Brief of Government-Appellant at 28, *Castillo*, 952 F.3d at 1315 (No. 19-1158), Dkt. No. 41-38 (arguing that "[t]he trial court correctly held that it did not have to consider the chains of title Plaintiffs first introduced on reconsideration" and that "[o]n that basis alone, the trial court acted within its discretion in denying Plaintiffs' motion for reconsideration" and that "[t]his Court need proceed no further to affirm the trial court's judgment….")

In *Loveridge v. United States*, Judge Firestone granted the government's motion for summary judgment regarding whether an intervening road cut off plaintiffs' ownership to the centerline of the railroad in a rails-to-trails case. 149 Fed. Cl. 64, 72-77 (2020). On a motion for reconsideration, one of the requested grounds for relief from the plaintiffs was that they be

permitted to provide chain of title evidence for the Court's consideration. The CFC granted the plaintiffs' motion, stating as follows:

> [T]he court will exercise its discretion in these circumstances, *see Farmers Co-op*, 100 Fed. Cl. at 581, to grant reconsideration for the limited purpose of allowing the plaintiffs to conduct discovery to provide chain of title or other evidence supporting their arguments that they own property adjacent to the subject rail line. The court recognizes, as the government argues, that fact discovery has closed in this case and agrees that it is plaintiffs' burden to prove adjacency. Def.'s Resp. at 6-7. However, now that the court has ruled that the court disagrees with plaintiffs' presumed application of Oregon law, the court deems it appropriate to allow the plaintiffs to obtain additional evidence regarding adjacency for the twelve relevant parcels. The government has not shown that it would be prejudiced by additional, limited discovery. Moreover, **the court has previously left similar ownership issues open following summary judgment briefing where the record "lack[ed] any evidence regarding" ownership, but where "it appear[ed] that such evidence could be produced."** *Anderson v. United States*, 147 Fed. Cl. 661, 688 & n.26 (2020). The court therefore grants the plaintiffs' motion for reconsideration on this limited basis only.

*Loveridge v. United States*, 150 Fed. Cl. 123, 127 (2020) (emphasis added); *see also Anderson*, 147 Fed. Cl. at 688 n. 26 (denying both parties' motions for summary judgment, noting, "the court is reluctant to declare that there are no genuine issues of material fact when the record is devoid of any evidence to support a claim and it appears that such evidence could be produced.")

In another rails-to-trails case, *Thompson v. United States*, 101 Fed. Cl. 416, 430-431 (2011), the government again insisted that plaintiffs were required to provide chain of title evidence to prove their ownership. The CFC rejected the argument, holding, "The United States Court of Appeals for the Federal Circuit … has not issued a precedential opinion requiring that a plaintiff alleging a taking by virtue of the issuance of a NITU demonstrate an unbroken chain-of-title to establish a reversionary property interest in land previously acquired by a railroad," and the plaintiffs' presentation of their ownership deeds and tax records was sufficient to prove ownership. *Id.* at 431; *accord Dana R. Hodges Trust v. United States*, 101 Fed. Cl. 549, 559-560 (2011) (rejecting the government's argument that the plaintiffs in a rails-to-trails case were required to

6

provide chain of title evidence where they produced their deeds, tax records, and ICC valuation maps); *4023 Sawyer Road I, LLC v. United States*, 175 Fed. Cl. 79, 97 (2025) (in summary judgment ruling, "[t]he court held a conference with the Parties and explained that a chain of title … will be necessary to determine whether [particular] claims survive" and "defer[red] ruling … until that issue is developed through the chain of title that the court directed the Parties to file."); *Brooks v. United States*, No. 15-843L, 2018 WL 564395, at *3 (Fed. Cl. Jan. 26, 2018) (allowing 60 days for plaintiffs to gather chain of title evidence after summary judgment briefing was complete but not allowing an additional enlargement of time).

In addition to the above authority, Plaintiffs direct the court to *Colonial Chevrolet Co., Inc. v. United States*, 139 Fed. Cl. 599, 604-605 (2018), where plaintiffs moved to supplement their summary judgment evidence after briefing concluded and after oral argument. The government opposed the motion, arguing that the evidence – consisting of an expert report, deposition excerpts, and other documents – was not new and was available to the plaintiffs during summary judgment briefing and before oral argument and thus the plaintiffs' motion was untimely. *Id.* The CFC considered the issue pursuant to RCFC Rule 56(e), which provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by RCFC 56(c), the court may: (1) give an opportunity to properly support or address the fact; [or] ... (4) issue any other appropriate order." *Id.* at 605. Judge Firestone exercised her discretion and granted the motion, holding that "it is in the interest of justice to consider the new evidence submitted by plaintiffs before ruling on summary judgment." *Id.*

It also makes sense procedurally to reserve submission of chain of title evidence until after a ruling on the centerline presumption. The nature of an evidentiary presumption necessarily leaves triable issues of fact even if it is rebutted. In other words, the rebuttal of the centerline presumption

does not determine ownership of the land in the right-of-way; it merely counteracts the assumption that the landowner does. Both parties can thereafter present evidence that either supports or undermines Plaintiffs' ownership of the land. That is because the centerline presumption is just that, a presumption, and an evidentiary presumption at that, meaning that even if the presumption is rebutted, the result is that ownership has not been determined and remains an open question. Someone owns the land, Plaintiffs claim it is them, and the mere rebuttal of a presumption does not end the dispute. Therefore, the mere rebuttal of an evidentiary presumption should not mean that the landowner automatically loses.

Importantly, the cost of obtaining chains of title for all 79 Plaintiffs and 84 parcels would have been well into six figures. Indeed, the initial estimate Plaintiffs have received to obtain 16 chains of title for the 15 Plaintiffs owning 16 parcels of land who are the primary subject of this motion is for $2,100-$2,500 per chain of title, or $33,600 - $40,000 total (plus costs for copies and associated fees). Hence, for all 84 parcels, the cost would have been between $176,400+ - $210,000+. If one adds the 104 parcels at issue in *Snee*, then the total cost for chains of title for these two cases proceeding contemporaneously would be between $394,800+ - $470,000+.

Plaintiffs believed it was premature to incur these costs, which ultimately would have been paid by taxpayers under the URA framework, before the parties knew whether the centerline presumption would be rebutted. In fact, chains of title are often unnecessary in rails-to-trails cases because courts usually find the centerline presumption has not been rebutted, which eliminates the need for chain of title evidence. Therefore, it would be wasteful to adopt a framework that requires plaintiffs to submit chain of title evidence if those plaintiffs would have won the centerline presumption issue without such evidence—particularly where the evidence is expensive to obtain and funded by taxpayer dollars.

In addition, Plaintiffs expect the government would object to paying URA expenses for chains of title obtained on behalf of Plaintiffs who prevail on the centerline presumption. As noted, 48 Plaintiffs (who own 50 parcels of land) prevailed on the centerline presumption issue on the strength of their ownership deeds and without the need for chain of title evidence that would have cost between $105,000+ – $125,000+. It would have been a waste of resources for the Plaintiffs who prevailed on the centerline presumption issue to have obtained and submitted chain of title evidence. Furthermore, if all plaintiffs are required to submit chain of title evidence in every rails-to-trails case where the centerline presumption is potentially at issue, it would ultimately cost the federal government millions of dollars in unnecessary expenses (*i.e.*, for plaintiffs who would prevail on the centerline presumption without the need for chain of title evidence).

Plaintiffs respectfully submit that the issue of ownership for the 15 Plaintiffs who prevailed on fee versus easement but did not prevail on the centerline presumption issue, should be reserved for trial and that chain of title evidence should be considered at the trial. Alternatively, if the Court intended for these 15 Plaintiffs to be dismissed, then Plaintiffs intend to proceed with a motion for reconsideration as soon as the chains of title can be gathered and presented to the Court.[4]

Plaintiffs have conferred with the government's counsel regarding this motion, and the government has stated that it will oppose this motion.

WHEREFORE, Plaintiffs respectfully request that the Court clarify its summary judgment opinion to inform the parties whether the 15 Plaintiffs who lost on the centerline presumption issue but prevailed on the fee versus easement issue have their ownership issues reserved for trial or

---

[4] Plaintiffs' have engaged a title company that promises to provide the chains of title for these 15 Plaintiffs' 16 parcels within 45-50 business days.

have been dismissed from the case, and to issue a ruling regarding the centerline presumption as applied to Plaintiff Van Vlack.

Date: December 22, 2025

Respectfully submitted by:

STEWART, WALD & SMITH, LLC

By */s/ Steven M. Wald*
Steven M. Wald
Michael J. Smith
3636 S. Geyer Rd., Suite 200
Saint Louis, MO 63127
Telephone:	(314) 720-0220
Facsimile:	(314) 899-2925
wald@swslegal.com
smith@swslegal.com

-and-

Thomas S. Stewart
Reed W. Ripley
3515 W. 75th St., Suite 201
Prairie Village, KS 66208
Telephone:	(816) 303-1500
Facsimile:	(816) 827-8068
stewart@swslegal.com
ripley@swslegal.com

ATTORNEYS FOR PLAINTIFFS