## UNITED STATES COURT OF FEDERAL CLAIMS

MICHAEL ZANZARELLA, et al.,

    *Plaintiffs*,

        v.

UNITED STATES OF AMERICA,

    *Defendant*.

Case No. 24-239L

Judge David A. Tapp

## UNITED STATES' MOTIONS *IN LIMINE*

In accordance with the Pretrial Schedule set forth in the December 15, 2025 Order, Dkt No. 56 at 57, the United States files these motions *in limine* and respectfully requests that the Court order as follows:

(1) Pursuant to Federal Rules of Evidence ("FRE") 401 and 402, prohibit Plaintiffs from introducing (a) sixteen unidentified, unproduced exhibits vaguely titled "Chain-of-Title" evidence, and (b) the testimony of Bob Grezch, a previously undisclosed fact witness.

(2) Pursuant to FRE 401, 402, and 702, prohibit Plaintiffs' appraiser Mr. Luke Nordine from testifying about his opinion of value related to the Plaintiffs that do not or have not proven they own an interest in the Beacon Line Corridor.

(3) Pursuant to FRE 401, 402, and 703, prohibit Mr. Nordine from testifying about his opinion of the market value of the taking of a permanent easement.

(4) Pursuant to FRE 702, prohibit Mr. Nordine from testifying about his January 17, 2026 "letter update" that purports to consider the Maybrook Trail in the Before condition.

The grounds for these motions are detailed in the supporting memorandum and the attached

exhibits.

Dated: February 12, 2026.

Respectfully submitted,

ADAM R.F. GUSTAFSON

Principal Deputy Assistant Attorney General
Environment & Natural Resources Division

*/s/ Emily A. Davis (filed w/ perm.)*
Emily A. Davis
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 297-2862
emily.davis@usdoj.gov

*Counsel for Defendant United States*

## UNITED STATES COURT OF FEDERAL CLAIMS

MICHAEL ZANZARELLA, et al.,

     *Plaintiffs*,

          v.

UNITED STATES OF AMERICA,

     *Defendant*.

Case No. 24-239L

Judge David A. Tapp

## UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTIONS *IN LIMINE*

## Table of Contents

Introduction ........................................................................................................................... 1

Standard of Review ............................................................................................................... 2

Motions *In Limine* to Exclude Certain Evidence .............................................................. 3

    I.     The Court Should Exclude Plaintiffs' Unidentified Evidence Related to
         Chains of Title and the Testimony of Bob Grezch ................................................. 3

         A.    Legal Standard for Excluding Previously Undisclosed Exhibits and
              Witnesses ..................................................................................................... 4

         B.    Plaintiffs' Yet to be Identified Chain of Title Exhibits Should be
              Excluded ...................................................................................................... 4

         C.    Mr. Grezch Should Be Barred from Testifying ......................................... 8

    II.    Mr. Nordine's Opinions Wrongly Assume that All Plaintiffs Have Property
         Interests in the Beacon Line Corridor .................................................................... 9

         A.    Mr. Nordine's Testimony Should be Excluded Where the Original
              Railroad Acquired Fee in the Corridor .................................................... 11

         B.    Mr. Nordine's Reports Are Irrelevant Where the Plaintiffs Have Not
              Shown Their Interest in the Beacon Line Corridor Extends to the
              Centerline ................................................................................................. 12

    III.    The Court Should Exclude Mr. Nordine's Testimony Related to the Market
         Value of the Taking ............................................................................................... 13

    IV.    Mr. Nordine's "Letter Update" Related to Properties Adjacent to the
         Maybrook Trail Does Not Satisfy the FRE............................................................ 16

         A.    Mr. Nordine Failed to Follow the Court's Direction to Consider the
              Maybrook Trail in the Before Condition ................................................. 17

          B.    Mr. Nordine's "Letter Update" is Unreliable Because it Fails to
              Consider the Properties at Issue .............................................................. 18

         C.    Mr. Nordine's "Letter Update" is Based on Insufficient Facts and
              Data ........................................................................................................... 19

CONCLUSION.................................................................................................................... 20

## Table of Authorities

**Page(s)**

**Cases**

*233rd St. P'ship, L.P. v. United States*,
 No. 23-cv-1358, 2025 U.S. Claims LEXIS 1155 (Fed. Cl. May 7, 2025)................................ 13

*Argo v. Gregory*,
 No. 12-cv-212, 2014 U.S. Dist. LEXIS 164127 (S.D. Ga. Nov. 24, 2014)............................... 7

*Barry v. Medtronic, Inc.*,
 No. 14-cv-104, 2016 U.S. Dist. LEXIS 203343 (E.D. Tex. Sep. 20, 2016)............................ 15

*Baskett v. United States*,
 2 Cl. Ct. 356 (1983) ........................................................................................................... 2

*Caldwell v. United States*,
 391 F.3d 1226 (Fed. Cir. 2004) ......................................................................................... 14

*Camp Bearberry, LLC v. Khanna*,
 234 A.D.3d 1158 (N.Y. App. Div. 2025) ............................................................................ 13

*Caquelin v. United States*,
 959 F.3d 1360 (Fed. Cir. 2020) ......................................................................................... 10

*Castillo v. United States*,
 952 F.3d 1311 (Fed. Cir. 2020) ......................................................................................... 10

*Corning v. Lehigh v. R. Co.*,
 14 A.D.2d 156 ................................................................................................................... 13

*Cowan v. Carnevale*,
 300 A.D.2d 893 (N.Y. App. Div. 2002) .............................................................................. 11

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)............................................................................................................ 2

*DiMarino v. United States*,
 No. 24-262 (Fed. Cl. May 13, 2025) .................................................................................. 14

*Guillory v. Domtar Indus. Inc.*,
 95 F.3d 1320 (5th Cir. 1996) ............................................................................................. 15

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999)............................................................................................................ 3

*McClurg Family Farm, LLC v. United States*,
 115 Fed. Cl. 1 (2014) ........................................................................................................ 13

*Micro Chem., Inc. v. Lextron, Inc.*,
 317 F.3d 1387 (Fed. Cir. 2003) ........................................................................................... 2

*N.Y.C. Council v. City of N.Y.*,
    4 A.D.3d 85 (N.Y. App. Div. 2004) ..................................................................... 11

*Ollier v. Sweetwater Union High Sch. Dist.*,
    768 F.3d 843 (9th Cir. 2014) ............................................................................... 9

*Otay Mesa Prop., L.P. v. United States*,
    779 F.3d 1315 (Fed. Cir. 2015) .......................................................................... 16

*Perez v. Dill*,
    No. 7-cv-1794, 2016 U.S. Dist. LEXIS 11032 (E.D. Cal. Jan. 29, 2016) ............... 6

*Prakhin v. United States*,
    164 Fed. Cl. 440 (2023) ........................................................................... 4, 7, 8, 9

*Precision Pine & Timber Inc. v. United States*,
    596 F.3d 817 (Fed. Cir. 2010) ........................................................................... 16

*Roe v. Cypress-Fairbanks Indep. Sch. Dist.*,
    No. 18-cv-2850, 2025 U.S. Dist. LEXIS 112693 (S.D. Tex. June 13, 2025).......... 15

*Sauer W. LLC v. United States*,
    151 F.4th 1339 (Fed. Cir. 2025) ........................................................................ 14

*Weeks Dredging & Contracting, Inc. v. United States*,
    11 Cl. Ct. 37 (1986) ............................................................................................ 2

**Rules**

Fed. R. Evid. 401 ................................................................................... 2, 10, 15

Fed. R. Evid. 401(b) .......................................................................................... 12

Fed. R. Evid. 402 ................................................................................... 10, 12, 15

Fed. R. Evid. 402 ................................................................................................ 2

Fed. R. Evid. 403 ................................................................................... 10, 15, 16

Fed. R. Evid. 702 ........................................................................... 1, 2, 3, 15, 17

Fed. R. Evid. 702(a) .......................................................................................... 15

Fed. R. Evid. 702(b) .......................................................................................... 20

Fed. R. Evid. 702(c) .......................................................................................... 10

Fed. R. Evid. 702(d) .......................................................................................... 18

RCFC 16 ............................................................................................................ 2

RCFC 16(c)(2) ................................................................................................... 2

RCFC 26 ............................................................................................................ 9

RCFC 26(a)(2)(A) .............................................................................................. 8

RCFC 26(e) ................................................................................................................ 6

RCFC 37(c)(1) ........................................................................................................... 4

## Introduction

Simply stated, this case is scheduled for trial, but Plaintiffs lack a trial-ready record. Plaintiffs' case-in-chief relies on evidence that is inadmissible under the Federal Rules of Evidence ("FRE"), because is it irrelevant, untimely, misleading, or waived due to Plaintiffs' failure to develop it during discovery. The evidentiary rules prevent parties from papering over gaps in their proof at trial, which is what Plaintiffs attempt here.

The United States respectfully submits the following motions *in limine* for purposes of ensuring that the trial rests on admissible evidence. First, the Court should exclude "chain-of-title records," which Plaintiffs have not identified or disclosed in this case. Relatedly, the Court should exclude the testimony of Plaintiffs' fact witness, Bob Grezch, who will testify about the "chain-of-title records," despite Plaintiffs not previously disclosing Mr. Grezch in any capacity in this case. Second, the Court should Mr. Luke Nordine's valuation opinions concerning twenty Plaintiffs without an interest in the Beacon Line Corridor. Six Plaintiffs lack ownership interests due to the doctrine of merger, and sixteen Plaintiffs lack ownership interests due to the plain language of the applicable deeds (two of these sixteen plaintiffs also lack an ownership interest due to the doctrine of merger).

Third, the Court should exclude Mr. Nordine's valuation of a permanent easement as irrelevant, confusing, misleading, and unhelpful to the trier of fact, among other bases, because no trail use agreement exists to warrant a permanent easement valuation. Fourth and finally, the Court should exclude from trial Mr. Nordine's supplemental expert opinions, as set forth in a letter dated January 20, 2026, because those opinions are contrary to the Uniform Standards of Professional Appraisal Practice ("USPAP") and are premised on incomplete facts and data. As such, they are unhelpful and unreliable under FRE 702.

Plaintiffs believe that trial will somehow supply what the record lacks. But the Rules of the United States Court of Federal Claims ("RCFC") and the FRE do not permit this maneuvering. The United States' motions *in limine* seek to prevent trial from becoming a forum for speculation, assumptions, and an after-the-fact patchwork of the missing elements of Plaintiffs' takings claim, for which they have the burden of proof. For these reasons, the Court should grant the United States' motions as doing so will enforce Plaintiffs' burden, prevent trial by ambush, and streamline and clarify the issues.

## Standard of Review

The RCFC empowers this Court to make pre-trial rulings that simplify issues for trial. RCFC 16(c)(2); *Baskett v. United States*, 2 Cl. Ct. 356, 359 (1983). "This power allows the court, *inter alia,* to define the issues, facts, and theories actually in contention and to weed out extraneous issues." *Baskett*, 2 Cl. Ct. at 359. A motion *in limine* is one method by which a party can obtain such pre-trial rulings. *Weeks Dredging & Contracting, Inc. v. United States*, 11 Cl. Ct. 37, 45 (1986). The RCFC anticipates that courts will rule on motions *in limine* that address the "admissibility of evidence," "avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under [FRE] 702." RCFC 16 (c)(2)(C)-(D).

Only relevant evidence is admissible. Fed. R. Evid. 402. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. If evidence fails to satisfy the relevance requirement, it is inadmissible. Fed. R. Evid. 402.

Under FRE 702, "the trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-92 (1993); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003) (noting

that the trial court must exclude "expert testimony that is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case").  FRE 702 permits expert opinion testimony when its "proponent demonstrates to the court that it is more likely than not" that the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," the testimony "is based on sufficient facts or data," and "the expert's opinion reflects a reliable application" of sound principles and methods to the facts of the case.  Where the proponent of expert testimony does not make such a showing, the trial court is under a "special obligation" of "gatekeeping" to exclude irrelevant or unreliable evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also* Advisory Committee Notes to 2023 Amendments to FRE 702 (noting that the amendments "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements" and also noting the court's "gatekeeping" function).  This gatekeeping obligation and the *Daubert* principles are not limited to "scientific" opinion but extend to "technical" or "other specialized knowledge." *Kumho Tire Co.*, 526 U.S. at 147-53.

## Motions *In Limine* to Exclude Certain Evidence

## I.    The Court Should Exclude Plaintiffs' Unidentified Evidence Related to Chains of Title and the Testimony of Bob Grezch

As Plaintiffs have repeatedly admitted, they did not develop evidence related to their chains of title during this matter's discovery period.  *See, e.g.*, Dkt. No. 57 at 4.  Nonetheless, such evidence appears on both Plaintiffs' Exhibit and Witness Lists.  *See* Dkt. Nos. 69-1 at 2, 69-2 at 11-12.

The February 6 Exhibit List includes placeholders for the "chain-of-title" evidence Plaintiffs "expect[ ] to offer" for each of the sixteen Plaintiffs for whom the United States rebutted

the centerline presumption.  *See* Dkt. No. 69-1 at 11-12.  For example, for PX208, the Bates

numbers are listed as "TBD" and the description is "Chain-of-Title for Firas Abbasi Parcel No.

133089-6356-01-189582-0000."  The United States does not have copies of any of these exhibits.

And, as of the date of this motion, Plaintiffs have not told the United States when they intend to

produce the exhibits.

Similarly, the February 6 Witness List included "Bob Grezch, Corporate Representative of

Western Land Services."  Dkt. No. 69-2 at 2.  According to Plaintiffs, Mr. Grezch will testify for

two hours "regarding actions taken to obtain chains of title" that the United States has never seen.

*Id.*  Mr. Grezch was never included in any of Plaintiffs' disclosures.

Because Plaintiffs' untimely disclosure of these exhibits and Mr. Grezch violate the RCFC

and unduly prejudices the United States, the exhibits and Mr. Grezch's testimony should be

precluded at trial.

### A.    Legal Standard for Excluding Previously Undisclosed Exhibits and Witnesses

Under RCFC 37(c)(1), information or a witness not disclosed during discovery cannot be

used at trial "unless the failure was substantially justified or is harmless."   "[W]hile disclosure of

a document or witness for the first time in a pretrial list is not categorically forbidden, parties

remain obligated to make disclosures and productions under Rules 26 and 34, consistent with Rule

37(c)(1)."  *Prakhin v. United States*, 164 Fed. Cl. 440, 452 (2023).

### B.    Plaintiffs' Yet to be Identified Chain of Title Exhibits Should be Excluded

Plaintiffs should have developed the evidence necessary to show that they have property

interests in the Beacon Line Corridor before filing this suit on February 15, 2024.  They did not.

Alternatively, they should have developed it during the ten-month-long discovery period.  They

did not.  Plaintiffs also did not develop this evidence after the Court denied their Motion for

Summary Judgment.  Nor did they develop it after the Court denied their Motion for Clarification. Nor did they develop it before filing their Exhibit List on February 6, opting instead to write "TBD" for sixteen exhibits.  Now, with less than two months to go before the start of trial, Plaintiffs have still not produced exhibits purportedly showing that sixteen of them have property interests that the United States could have taken.  This is improper, and these sixteen exhibits should be excluded from trial as there is no way to rectify the harm this trial by ambush inflicts upon the United States.

Plaintiffs have repeatedly claimed that they did not develop this evidence during discovery because of their "counsel's experience in rails-to-trails cases before the CFC" and their concern about "the cost to the taxpayer."  Dkt. No. 57 at 4.  As the United States has explained, Plaintiffs' justification for their failure to develop their evidence is baseless and pretextual.  *See* Dkt. No. 59. Plaintiffs knew they had to establish an ownership interest in the Beacon Line Corridor to prevail in this lawsuit,[1] and their counsel should have read the operative modern deeds to determine whether developing additional evidence beyond just those deeds was necessary.  Thus, Plaintiffs' failure to develop this evidence during discovery is not justified.

Plaintiffs' delayed development of this crucial evidence is also not justified considering the United States' discovery requests to Plaintiffs and their responses.  The United States requested Plaintiffs' chains of title in its July 5, 2024 discovery requests, an indication that the United States deemed these documents important.  *See* Ex. 1.  Plaintiffs, too, must believe the documents are important given the Herculean efforts they have made to get the Court to consider them both in *Zanzarella*, *see, e.g.*, Dkt. No. 57, and in the related case *Snee v. United States*.[2]  Yet, Plaintiffs all-but disavowed the documents' importance in responding to the United States' discovery

---

[1] First Am. Compl. ¶¶ 6-95, Dkt. No. 8.
[2] See Plaintiffs' Motion for Leave to File a Supplemental Brief and Plaintiffs' Motion to Reopen Discovery in *Snee v. United States*, No. 22-199, Dkt. Nos. 50, 56.

requests, directing the United States to Plaintiffs' "ownership deed[s]," "New York's centerline presumption," and "the conveyance to the original acquiring railroad." Ex. 2 at 3.[3]  In other words, Plaintiffs' conduct mislead the United States to its prejudice and failed to comply with their obligations to supplement under RCFC 26(e) by refusing to provide the evidence in response to a direct request, by pointing to other evidence instead, and by never supplementing or correcting their response.

However, even assuming that Plaintiffs were justified in putting off obtaining chains of title until December 15, 2025, there is no justification for Plaintiffs still not producing those chains of title almost two months later.  It is all the more unacceptable considering they have listed such "to be determined" documents on their exhibit lists. They expect to offer such documents at trial but have still failed to share a single page with the United States, despite the rapidly approach start of trial.

Moreover, Plaintiffs' failure to comply with their discover obligations is not harmless.  It imposes significant prejudice on the United States that cannot be rectified in the less than two months before trial.  Plaintiffs do not explain what they mean by "chain-of-title" documents.  This lack of specificity alone is reason enough to exclude exhibits PX208-223 because the United States and the Court do not know what will be in these exhibits.  *See Perez v. Dill*, No. 7-cv-1794, 2016 U.S. Dist. LEXIS 11032, at *6 (E.D. Cal. Jan. 29, 2016) (granting a motion to exclude items in a "proposed exhibit list [that] are too vague to allow for identification of what the exhibit is").

While Plaintiffs' descriptions of exhibits PX208-223 create the impression that each

---

[3] Because each Plaintiff's responses and objections to the United States' discovery requests were substantially identical, the United States only included one Plaintiff's responses and objections with this Motion.  The United States can provide the responses and objections for the other fifteen Plaintiffs upon request.

exhibit will be one document, this is unlikely.  Rather, each exhibit will likely be multiple documents that trace the title for each property from the date of the applicable source deed to the present.  Based on the United States' experience, it estimates that these still-illusory exhibits could total 700 pages combined.  Where, as here, it is impossible to determine from the exhibit description the size of the yet-to-be-produced exhibit, courts have excluded the exhibit from trial. *See Argo v. Gregory*, No. 12-cv-212, 2014 U.S. Dist. LEXIS 164127, at *7-8 (S.D. Ga. Nov. 24, 2014) (excluding an exhibit from trial that could contain "a potentially infinite number of documents" because the opposing party could not "be expected to object in any meaningful way prior to trial").

Having not yet received these missing hundreds of pages of documents from Plaintiffs, there is not enough time for the United States to prepare its defense.  The United States does not have enough time to review the voluminous documents, identify potential problems and/or gaps in the title, and research the applicable law governing the documents' substance and completeness. The United States would also lack the opportunity to conduct its own investigation and/or follow up discovery.  These problems will be aggravated by the fact that any documents in the chains of title that pre-date 1900 will likely be handwritten and, therefore, more difficult to review.  Further, this description of the harm assumes the United States will receive the documents before trial. Plaintiffs have given the United States and the Court no reason to believe they will get the documents before the eve of trial.

*Prakhin* is instructive.  In *Prakhin*, the court granted the United States' motion to exclude documents that the plaintiff did not disclose until after the close of discovery.  *See* 164 Fed. Cl. at 453.  The court explained "that untimely productions after the close of discovery are not harmless" because "[t]he government ha[s] no way to cure the potential harm without re-opening fact or

expert discovery." *Id.*

Here, the harm to the United States is even more pronounced. Not only is there no time to re-open discovery in the two months before trial, there is also little point in doing so, as the United States does not have any of the sixteen exhibits.

### C.    Mr. Grezch Should Be Barred from Testifying

Plaintiffs first disclosed Mr. Grezch to the United States on their January 8, 2026 preliminary witness list, where he was listed as an expert witness. *See* Ex. 3.[4] Plaintiffs included him again on their February 6 Witness List, this time listing him as a fact witness, specifically a "Corporate Representative of Western Land Services." Dkt. No. 69-2 at 2. Plaintiffs did not disclose Mr. Grezch as a person likely to have discoverable information in either their July 22, 2024 initial disclosures or their September 3, 2024 supplemental disclosures. *See* Ex. 5. They also did not disclose him as an expert by January 21, 2025 (the agreed upon date for Plaintiffs to disclose their affirmative expert reports, *see* Dkt. No. 29 at 2) or March 28, 2025 (the end of all discovery, *see* Dkt. No. 30).[5] In short, before January 8, 2026, the United States had never heard of Mr. Grezch. And, as a result, he should be barred from testifying.

Plaintiffs' failure to disclose Mr. Grezch is not justified for the same reasons that their failure to disclose the chains of title documents is not justified. Plaintiffs' failure to disclose Mr. Grezch until January 8 is not justified for an additional reason: it is evident Plaintiffs retained his

---

[4] Plaintiffs served their first exhibit and witness lists on December 4, 2025. However, Plaintiffs did not include Mr. Grezch on that witness list. *See* Ex. 4.

[5] The United States assumes for the purpose of this Motion that Mr. Grezch is a fact witness. However, given that Plaintiffs initially identified Mr. Grezch as an expert and the subject matter of his testimony, the United States is concerned that his testimony may cross the line between lay opinion testimony under Rule 701 and expert opinion testimony under Rule 702. Mr. Grezch never disclosed an expert report in this matter under RCFC 26(a)(2)(A), and should the Court deny this Motion, the United States reserves the right to move to exclude any impermissible expert testimony.

services as early as December 22, 2025.  *See* Dkt. No. 57 at 9 n.4.  Given the impending trial and Plaintiffs' failure to comply with its RCFC 26 obligations, Plaintiffs should have—at a minimum—disclosed Mr. Grezch as soon as they retained him.

Plaintiffs' failure is not harmless.  Re-opening discovery at this late stage, and without moving the trial, cannot cure the prejudice because it would force the United States "to scramble to depose" Mr. Grezch.  *Prakhin*, 164 Fed. Cl. at 455.  Moreover, while the United States has the right to depose Mr. Grezch, there is little point in doing so now.  Plaintiffs intend to call Mr. Grezch to talk about how he found the documents in the sixteen chains of title exhibits.  Yet, the United States cannot ask him about these documents as Plaintiffs still have not produced them.

In sum, Plaintiffs intend to prove a necessary element of their case—that sixteen of them have property interests that the United States could have taken—by relying on exhibits that the United States does not have, and Plaintiffs presumably do not yet have either, and a witness that was never previously disclosed.  Such trial "by ambush" must be foreclosed.  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).

## II.    Mr. Nordine's Opinions Wrongly Assume that All Plaintiffs Have Property Interests in the Beacon Line Corridor

In the appraisal report for Plaintiff Michael Zanzarella,[6] for example, Mr. Nordine explains one of the "Ordinary Assumptions" imposed in his report: "I was unable to investigate all aspects of the property appraised and, therefore, must make certain assumptions in the development of my opinion.  These *assumptions generally concern the title to the property and the physical characteristics of the property*."  Ex. 6 at PLXEXP9.  Mr. Nordine also explains the report's

---

[6] Plaintiff Michael Zanzarella is one of the twenty Plaintiffs that have not proven they own an interest in the Corridor.  The language cited in Mr. Nordine's report for the Zanzarella property is applicable to all Plaintiffs discussed in this Motion *in limine*.

"Hypothetical Condition" that "in the Before scenario, . . . the prior railroad easement has terminated and the unencumbered land has reverted back to the adjacent land owner who then owns the unencumbered fee estate interest." *Id.* Ultimately, Mr. Nordine's opinion of value of the taking is based on the amount of land that Plaintiffs claim to own in the Corridor. *Id.* at PLXEXP48.

However, twenty Plaintiffs cannot claim that they own the land in the Corridor for two reasons. First, six Plaintiffs do not own an interest in the Corridor because the original railroad obtained a fee interest by operations of New York's *doctrine of merger*. Second, and as explained above, sixteen Plaintiffs do not own an interest in the Corridor because their modern deeds contain clear exclusionary language reflecting the grantor's intent to exclude the Corridor, and Plaintiffs have not provided any evidence to the contrary, *see infra*.[7]

"It is a fundamental principle of takings law that a government action is not a taking of property if, even in the absence of the challenged government action, the plaintiff would not have possessed the allegedly taken property interest." *Caquelin v. United States*, 959 F.3d 1360, 1371 (Fed. Cir. 2020). Establishing a property interest in the former railroad corridor is a necessary element of every Rails-to-Trails case, for which Plaintiffs have the burden of proof. *See Castillo v. United States*, 952 F.3d 1311, 1314-15 (Fed. Cir. 2020). Where Plaintiffs have not proven this threshold element, any evidence predicated on that ownership is irrelevant, prejudicial, contrary to law, lacks foundation, and is a waste of time. Fed. Rule Evid. 401, 402, 403. Further, any such opinion would not satisfy FRE 702(c). Therefore, Mr. Nordine's testimony based on the incorrect factual predicate of ownership should be excluded for those Plaintiffs.

---

[7] Plaintiffs DeBonis, Schleicher, Van Vlack are in both groups—they do not own an interest in the Beacon Line Corridor because the railroad was conveyed a fee interest, and because their modern deeds exclude the Corridor.

**A.**     **Mr. Nordine's Testimony Should be Excluded Where the Original Railroad Acquired Fee in the Corridor**

Six Plaintiffs—Griffin, Brown, Chianese, Schleicher, Van Vlack, and DeBonis—do not own an interest in the Beacon Line Corridor because the original railroad acquired fee in the corridor by operation of New Yorks' *doctrine of merger*. Under New York law, "the general rule is that . . . when both the dominant and servient estates are entirely owned by the same person, the easement is extinguished by the doctrine of merger. Simply, under those circumstances, the easement serves no purpose because the owner may use either estate freely." *Cowan v. Carnevale*, 300 A.D.2d 893, 894-95 (N.Y. App. Div. 2002) (citations and quotations omitted). "Where the dominant and servient estates come into the ownership of the same owner, any easement is extinguished." 5 Warren's Weed New York Real Property § 40.54. New York's doctrine of merger is a recognition that "a person cannot have an easement in his or her own land." *Cowan*, 300 A.D.2d at 894.

As to the Griffin, Brown, Chianese, Schleicher, Van Vlack, and DeBonis claims, Plaintiffs moved in their Motion for Summary Judgment that both the Tabor SC.142 condemnation order and the Tabor 149/75 warranty deed were pertinent to the claim. *See* Pls. Mot. Summ. J. Exs. 1, 5, Dkt. Nos. 38-1, 38-5. Both instruments apply equally to the Corridor adjacent to the six properties—they are spatially co-extensive with each other. This Court ruled that the Tabor 149/75 deed conveyed fee to the railroad, and the Tabor SC.142 deed conveyed an easement. *See* Order on the Cross Mots. Summ. J., Dkt No. 56 at 6, 18.

Despite both instruments applying to those six Plaintiffs, the railroad acquired unity of title of both the dominant (fee) and servient (easement) estates. This unity of title in the corridor caused those estates to merge under New York law, extinguishing the easement in turn. *See, e.g.*, *N.Y.C. Council v. City of N.Y.*, 4 A.D.3d 85, 90 (N.Y. App. Div. 2004) (explaining that "the merger

11

process is automatic and the easement is immediately extinguished"). The Valuation Schedule produced by Plaintiffs at PLF001307—identifying only the Tabor 149/75 fee deed and omitting the Tabor SC.142 order—further supports this conclusion. *See* Pls.' Mot. Summ. J. Ex. 157, Dkt No. 38-157 (identifying the applicable instruments by which the original railroad acquired its interest in the corridor). Thus, under New York's doctrine of merger these six Plaintiffs do not have an interest in the Beacon Line Corridor.[8]

While the proper remedy for this threshold problem would be to dispose of these claims, Mr. Nordine's appraisal reports for these six Plaintiffs are irrelevant either way and should be excluded. This valuation evidence is conditionally relevant based on the existence of ownership. Those reports assume, incorrectly, that Plaintiffs Griffin, Brown, Chianese, Schleicher, Van Vlack, and DeBonis have title to the Beacon Line Corridor. Without ownership, the valuation evidence cannot relate to any "fact of consequence." Fed. Rule Evid. 401(b) . Therefore, this testimony is irrelevant and inadmissible. Fed. Rule Evid. 402.

### B.   Mr. Nordine's Reports Are Irrelevant Where the Plaintiffs Have Not Shown Their Interest in the Beacon Line Corridor Extends to the Centerline

As stated above, Plaintiffs have not shown that their modern deeds conveyed an interest in the Corridor. Rather, as it pertains to Plaintiffs Zanzarella, Abbasi, DeBonis, DeWitt, Durk, Ferris, Fero Kane, Kuran, Oken, Ott, Payne, Richard E. Monroe Trust, Schleicher, Tivnan, Valentino (Claim No. 85b), and Van Vlack, those modern deeds include "language that affirmatively limits the scope of the conveyance." Order on Cross Mots. for Summ. J. at 19.

Under New York law, a determination of the grantor's intent ends at the plain language of

---

[8] The United States believes that these Plaintiffs should be dismissed from this lawsuit and have communicated this position with counsel for Plaintiffs. Plaintiffs declined to voluntarily dismiss Plaintiffs Griffin, Brown, Chianese, Schleicher, Van Vlack, and DeBonis.

the deeds.  *233rd St. P'ship, L.P. v. United States*, No. 23-cv-1358, 2025 U.S. Claims LEXIS 1155, at *6 (Fed. Cl. May 7, 2025) ("Under this legal regime, a property deed's four corners are determinative, unless there is some textual ambiguity in the deed itself.") (citing *Camp Bearberry, LLC v. Khanna*, 234 A.D.3d 1158 (N.Y. App. Div. 2025)).  A railroad company may acquire a corridor or right of way in fee.  *See, e.g.*, *Corning v. Lehigh v. R. Co.*, 14 A.D.2d 156, 159 (App. Div. 4th Dept. 1961) (concluding that, in the absence of limiting language, the right-of-way was conveyed in fee to the railroad company).  In the context of a takings action, the court may dismiss those claims where plaintiffs fail to meet their burden of proving an ownership interest in the railroad corridor adjacent to their property.  *See, e.g.*, *McClurg Family Farm, LLC v. United States*, 115 Fed. Cl. 1, 17-18 (2014).

Here, the takings claims of the sixteen Plaintiffs listed above rest on deed instruments which, per their plain language, show that these Plaintiffs lack an interest in the Beacon Line Corridor.  *See*  Dkt. No. 43-3.  The United States has rebutted the centerline presumption for these sixteen Plaintiffs based on the plain language of the modern deeds.

Because Plaintiffs have not put forth *any* additional evidence showing that they have an interest in the Beacon Line Corridor, Plaintiffs cannot establish that they own the land underlying the former corridor to the centerline.  *See also* Dkt No. 56 at 9 ("Therefore, this Court finds that to the extent that the Group 3 deeds contain identical or analogous clauses, conversion of the rail corridor into a recreational trail does not exceed the scope of the easement.").  The Court should therefore also exclude Mr. Nordine's testimony as to these Plaintiffs.

### III.    The Court Should Exclude Mr. Nordine's Testimony Related to the Market Value of the Taking

Mr. Nordine's testimony related to the market value of the taking should be excluded because he values a permanent easement that simply does not exist.  As of the date of this filing,

no trail use agreement has been reached.  Instead, on January 30, 2026, the Surface Transportation Board granted Metro-North's request for a second one-year Extension of Interim Trail Use Negotiation Period.  *See* Ex. 7.  In turn, Metro-North's deadline to consummate abandonment of the Beacon Line is February 8, 2027.  *Id*. at 4.

In the Federal Circuit, without a trail use agreement, the taking in this case cannot be a permanent one.  *See, e.g.*, *Sauer W. LLC v. United States*, 151 F.4th 1339, 1343 (Fed. Cir. 2025); *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004).  The NITU triggers several possible outcomes: "it may result in a permanent taking in the event that a trail use agreement is reached and abandonment of the right-of-way is effectively blocked, whereas it may result in a temporary taking when negotiations fail."  *Sauer W. LLC* 151 F.4th at 1343 (cleaned up).

Applying the test for causation in the absence of a trail use agreement, this Court found that Plaintiffs in this matter "have demonstrated that MNR would have abandoned the rail line absent the NITU."  Dkt. No. 56 at 53.  This accords with this Court's prior finding in the indirectly related case *DiMarino v. United States*, that: "Without a trail use agreement, the taking in this case cannot be a permanent one.  At most, with the facts before the Court, that taking is temporary. . . . Generally, in rails-to-trails cases, to prove that a temporary taking occurred, plaintiffs must show that the railroad would have consummated abandonment during the NITU period, absent the NITU."  *DiMarino v. United States*, No. 24-262 (Fed. Cl. May 13, 2025) (citations omitted).

Thus, in this case, the United States is, at most, liable only for a temporary taking because there is no trail use agreement.  However, Mr. Nordine has no opinions about a temporary taking. Instead, his only opinion for value assumes that the "property rights lost from the *permanent easement* in the after situation."  Ex. 6 at PLFEXP39 (emphasis added).  This renders Mr. Nordine's testimony unreliable—an expert witness cannot assume away fundamental, dispositive

14

facts. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("[A]n opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant."). Mr. Nordine's valuation testimony is irrelevant because he never valued the property interest that was allegedly taken—but instead a hypothetical, or aspirational outcome that has not occurred. *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.,* No. 18-cv-2850, 2025 U.S. Dist. LEXIS 112693, at *34 (S.D. Tex. June 13, 2025) (striking expert witness testimony that is based on a hypothetical outcome not at issue in the case, which cannot help "decide any fact at issue"). Because Mr. Nordine's opinions of value rest on an incorrect legal premise, it is inadmissible under FRE 702, irrelevant under FRE 401 and 402, and misleading under FRE 403.

First, the threshold question of admissibility under FRE 702(a) is whether the opinion will help the trier of fact. FRE 702 requires that expert testimony be based on sufficient underlying "facts or data." "The language 'facts or data' is broad enough to allow an expert to rely on hypothetical facts *that are supported by the evidence*." Fed. R. Evid. 702, Advisory Committee's Note 2000 amendments. Here, Mr. Nordine offers an opinion of value for a nonexistent scenario, for which there is no support in the record or as a matter of law. Plainly, it does not help this Court in its determination of just compensation.

Second, this testimony is irrelevant under FRE 401 and 402 because it has no probative value. As this Court has already recognized with respect to this rail line, there can at this time be no permanent Trails Act easement imposed on Plaintiffs' land. Therefore, there is no permanent easement at issue for trial. In turn, valuation of a permanent easement does not prove diminution of value or damages for a temporary take. Evidence that addresses a legal theory that is not before the trier of fact is irrelevant. *See Barry v. Medtronic, Inc.*, No. 14-cv-104, 2016 U.S. Dist. LEXIS 203343, at *5 (E.D. Tex. Sep. 20, 2016) ("[O]pinion on the legal conclusions to be drawn from

15

the evidence both invades the court's province and is irrelevant.").

Finally, even if the testimony does have some probative value, it should still be excluded under FRE 403. Mr. Nordine's opinion of value adds no probative value because the valuation of a permanent easement is not at issue. In turn, it is misleading because it implies that a permanent taking has occurred. This is additionally improper, because the scope of the United States' liability is a legal question for the Court (and, that this Court had already decided). Further, the risk of confusion is particularly acute where the expert testimony assigns a precise monetary value to a legally unsupported theory. Thus, any limited probative value is substantially outweighed by these dangers.

## IV.    Mr. Nordine's "Letter Update" Related to Properties Adjacent to the Maybrook Trail Does Not Satisfy the FRE

Proving the quantum of just compensation is an essential element of any Fifth Amendment takings claim, for which Plaintiffs bear the burden of proof. *See Otay Mesa Prop., L.P. v. United States*, 779 F.3d 1315, 1323 (Fed. Cir. 2015) ("To carry its burden, the landowner must show actual damages 'with reasonable certainty.'" (quoting *Precision Pine & Timber Inc. v. United States*, 596 F.3d 817, 833 (Fed. Cir. 2010))). The United States had previously identified that Plaintiffs had not met their burden of proof as to just compensation for, *inter alia*, the Plaintiffs owning land adjacent to the pre-existing Maybrook Trail. Dkt. No. 43 at 36-38. In its Order, this Court found that "overlooking the Maybrook Trail would obscure the fact that the trail does in fact exist," and directed Plaintiffs to "instruct its expert to consider the Maybrook Trail in its 'before condition' to calculate just compensation." Dkt. No. 56 at 55-56.

Plaintiffs subsequently served Mr. Nordine's "letter update" on January 20, 2026. *See* Ex. 8. Mr. Nordine's "letter update" purports to "provide our client, Stewart, Wald & Smith, LLC ("SWS"), and the presiding court, with supplemental opinions regarding just compensation in light

16

of the court's recent opinion and resulting legal instruction." However, it is clear that Plaintiffs have still failed to meet their burden of proof, despite the Court's grant of a second chance to do so. The "letter update" does not pass FRE 702 muster. For the reasons set forth below, the Court should exclude Mr. Nordine's testimony regarding the Maybrook Trail in the "before" condition, including the January 20, 2026 "letter update."

### A. Mr. Nordine Failed to Follow the Court's Direction to Consider the Maybrook Trail in the Before Condition

First, the so-called "letter update" evades any meaningful or cognizable consideration of the Maybrook Trail in the Before condition under the applicable standards. In other words, Mr. Nordine's "letter update" is simply not recognized as a reliable analysis by USPAP.

USPAP Advisory Opinion 3 (AO-3) states that, "regardless of the nomenclature used, when a client seeks a more current value or analysis of a property that was the subject of a prior assignment, this is not an *extension* of that prior assignment that was already completed – it is simply a new assignment." USPAP General Reference Manual, AO-3, page 14. Mr. Nordine circumvents this by incorporating his prior appraisal reports by reference in the "letter update." It is telling that Mr. Nordine never explicitly recognizes it as a new assignment despite understanding the instruction for an updated analysis. In a deposition of Mr. Nordine on February 9, 2026, counsel asked Mr, Nordine whether it is "fair for me to say that you were asked to provide an updated analysis of the subject properties considering the Court's recent opinion." Ex. 9 at 14:11-15. Mr. Nordine confirmed "I believe so, with the primary change being the Before condition, changes reflecting the Court's recent opinion." *Id*. at 14:16-18.

This is important, because Mr. Nordine ignored USPAP's new assignment mandate to consider the updated Before condition. Quite simply, Mr. Nordine did not develop new opinions of value for the subject properties as a new assignment, with the updated Before condition. For

instance, Mr. Nordine did not analyze comparable sales, did not consider subject sales purchased after the construction of the Maybrook Trail, did not speak with any buyers or sellers to determine market reactions to the Maybrook Trail, nor did he speak with any brokers or realtors to determine the market reactions to the Maybrook Trail.

This renders Mr, Nordine's testimony and opinions set forth in the "letter update" unreliable to the trier of fact, because they do not reflect "a reliable application of the principles and methods to the facts of the case." Fed. Rules Evid. 702(d).  Thus, Plaintiffs continue to not meet their burden of proof by failing to develop opinions of value under USPAP's recognized principles and methods. This Court should therefore exclude this testimony.

**B.    Mr. Nordine's "Letter Update" is Unreliable Because it Fails to Consider the Properties at Issue**

Second, Mr. Nordine entirely failed to consider that the Maybrook Trail even exists for many properties at issue.  In the letter update, Mr. Nordine states:

> There were no changes in the Before conditions and therefore no potential change in market value of Claims of 2-334 Fishkill Ave. LLC, 3ab-581 Main St Beacon LLC, 4-Abbasi, 7-Badia, 12-Brown, 16-Chianese, 18-Colbert, 20-Coppola, 23-DeBonis, 31-Durk, 33-Fernandez & Bliss, 45-Griffin, 49-Kane 2018 Irrevocable Trust, 56-Meyer, 58-Monroe Trust, 63-Oken, 65-Payne, 70-Roosa, 76-Schleicher, 85a-Valentino, 87-Van Vleck, [sic] and 90-Walker as these had neither trail or track improvements in the updated Before condition.

*Id.* at 2.  The critical problem here is that Plaintiffs Brown, Chianese, DeBonis, Griffin, Durk, Schleicher, and Van Vlack own property that is adjacent to the Beacon Line Corridor that is co-extensive with Maybrook Trail. *See* Dkt No. 43-4. Still, the "letter update" flatly concludes "that there were no changes in the Before conditions and therefore no potential change in market value." When asked about this in his deposition, Mr. Nordine stated that "my understanding is that there is a portion of the Maybrook Trail that has already been constructed as of that February 24 [sic] NITU date, and that these properties are not along that portion that were built out." Ex. 9 at 28:2-

18

13. The "letter update" also states that "Claims 44- Greene, 59-Morales, 62-O'Hara, and 77-Sebesta were identified as having half of the trail in the Before condition." Ex. 8 at PLFEX969. There is no Maybrook Trail adjacent to or within the boundaries of the Sebesta property.

Mr. Nordine's opinions on this matter will not "help the trier of fact to understand the evidence" of just compensation for the properties adjacent to the Maybrook Trail, because Mr. Nordine clearly did not know which properties are adjacent to a portion of the Corridor with the Maybrook Trail when he drafted the letter update. Fed. Rule Evid. 702(a). Indeed, both the letter update and his deposition testimony are not based on "sufficient facts or data." Fed. Rule Evid. 702(b). At a minimum, Mr. Nordine's opinions reflect a total unwillingness to consider how the Maybrook Trail impacts the individual properties. Thus, this "letter update" and corresponding testimony should be excluded as wholly unreliable.

### C.    Mr. Nordine's "Letter Update" is Based on Insufficient Facts and Data

Ultimately, Mr. Nordine concludes that "[t]here is no impact on the Before condition market value from the trail improvements remaining in the Before condition." Ex. 8 at PLFEX979. Instead of following USPAP's new assignment mandate for the new analysis, Mr. Nordine arrives here by considering the "cost to remove [the remnants], contributing value of the trail improvements, and market acceptance." *Id*. at PLFEX971. These considerations are based on fatally insufficient facts and data.

First, Mr. Nordine's determination of the estimated costs to remove the remnants of the Maybrook Trail on the properties is completely detached from the realities of the specific properties at issue. Mr. Nordine reports to have acquired cost estimates from two local contractors. *Id.* But, the local contractors were not given any specific information about the properties that would inform their cost estimates. For example, Mr. Nordine supplied a photo of the Maybrook

Trail to one of the contractors, to get a price per square foot estimate for the cost of removal.  *Id.* at 29.  When asked how this photo was selected in his deposition, Mr. Nordine replied that, "I just kind of went as generic as possible to apply to a—these four, you know, wide range of potential examples.  It just was non-descript and typical."  Mr. Nordine could not say where on the Maybrook Trail the reference photo was taken, except that "I don't necessarily think that it was along any of these four properties."  Mr. Nordine did not show these contactors any photos or images of the properties, nor did he provide any site-specific information about the properties.

Second, Mr. Nordine's claims of market acceptance are not supported by sufficient facts and data.  As mentioned above, Mr. Nordine testified that, to determine the market reaction of the Maybrook Trail, he did not speak to or survey any market participants, buyers or seller, or Realtors or brokers. Instead, to determine market acceptance for the Trail remnants, Mr. Nordine identified, in a series of maps of areas along the Maybrook Trail, that landowners use the areas along their property boundaries in various ways, including for "yard storage, employee areas, customer seating, outbuildings, gardens, recreational areas, and what appears to be a dog kennel."  Mr. Nordine then concludes that, "[t]he frequent presence of uses along property lines indicates there would be market acceptance for the trail improvements."  But Mr. Nordine arrives at this conclusion without showing the work.  Without more facts and data from market participants, Mr. Nordine makes a great leap of logic. He looked at no comparable sales whatsoever—no market evidence—to attempt to assess the value impact of the Trail remnants.  Thus, Mr. Nordine's opinion is not based on sufficient facts and data as required by FRE 702(b).  The Court should therefore exclude this opinion testimony.

## CONCLUSION

For the reasons set forth above, this Court should grant the United States' motions *in*

*limine*.

Dated: February 12, 2026.

Respectfully submitted,

ADAM R.F. GUSTAFSON

Principal Deputy Assistant Attorney General
Environment & Natural Resources Division

*/s/ Emily A. Davis (filed w/ perm.)*
Emily A. Davis
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 297-2862
emily.davis@usdoj.gov

*Counsel for Defendant United States*

21