# In the United States Court of Federal Claims

No. 24-239
Filed: March 26, 2026

---

**MICHAEL ZANZARELLA, et al.,**

          *Plaintiffs*,

**v.**

**THE UNITED STATES,**

          *Defendant.*

---

## ORDER

This matter came before the Court for a Final Pretrial Conference to resolve the various pending motions. (Final PTC Tr., ECF No. 100). Having reviewed the parties' submissions, the pertinent portions of the record, and the arguments of counsel, the Court issued several rulings from the bench. Plaintiffs' motion seeking to exclude United States' expert Matthew Krauser's valuation opinion, (ECF No. 73), was **DENIED**, (Final PTC Tr., 25:23–26:5). Similarly, the United States' motions seeking to exclude evidence related to "Chains of Title" and the testimony of Plaintiffs' expert Bob Grezch under FRE 401 and 402, (Def.'s Mot., ECF No. 72), were **DENIED AS MOOT**. (Final PTC Tr., 33:08–34:09; *see also* ECF No. 98). Likewise, the United States' effort to exclude Plaintiffs' expert Luke Nordine's testimony as to valuation, (ECF No. 72), was **DENIED**. (Final PTC Tr., 50:25–51:3).

The Court now turns to motions left unresolved at the Final Pretrial Conference. First, the United States moves to exclude the appraisal reports of Plaintiffs' expert, Mr. Nordine, as to six Plaintiffs, arguing that the railroad acquired fee title to the rail corridor and, therefore, the reports are irrelevant.[1] (Def.'s Mot. at 11–12). The United States raises two primary arguments. First, the United States argues that under "New York's *doctrine of merger* . . . 'when both the dominant and servient estates are entirely owned by the same person, the easement is extinguished . . . [because] the easement serves no purpose[.]'" (*Id.* at 11 (citing *Cowan v. Carnevale*, 300 A.D.2d 893, 894–95 (N.Y. App. Div. 2002)) (emphasis in original)). The United States notes that the six Plaintiffs rely on both the Tabor SC.142 condemnation order and the Tabor 149/75 warranty deed, which it asserts are "spatially co-extensive" and apply equally to the corridor adjacent to their properties. (*Id.*). Although the Court previously determined that the

---

[1] The United States identifies six Plaintiffs by their surnames: Griffin, Brown, Chianese, Schleicher, Van Vlack, and DeBonis. (Def.'s Mot. at 11, ECF No. 72). The Court notes that Plaintiff Brian Van Vlack has been severed and is no longer a Plaintiff in this matter. (*See* Ord. Severing, ECF No. 98).

Tabor 149/75 deed conveyed a fee interest and the Tabor SC.142 instrument conveyed an easement, the United States argues that these interests merged, resulting in the railroad holding unified fee title to the corridor. (*Id.*). As a result, the United States argues that the reports do not bear on any fact of consequence and are therefore irrelevant and inadmissible under FRE 402. (*Id.* at 12 (citing Fed. R. Evid. 402)).

Plaintiffs do not dispute that both instruments apply to the six properties at issue, but they do contest the United States' reliance on the merger doctrine. (Pls.' Resp. at 14, ECF No. 76 (asserting that the merger doctrine argument should have been raised earlier during summary judgment)). Plaintiffs assert that "the governing deed incorporating the condemnation duties and liabilities of the [General Railroad Act] *was* preceded by a condemnation order[.]" (*Id.* at 15 (emphasis in original)). Specifically, Plaintiffs assert that the Tabor Condemnation (Tabor SC.142), dated January 1, 1869, predates the Tabor deed (Tabor 149/75), dated August 13, 1869. (*Id.*). Under this sequence, Plaintiffs argue that the railroad first obtained an easement through condemnation and later confirmed that same limited interest through the deed, precluding any unity of title. (*Id.* ("There can be no unity established by one party maintaining its same estate.")). The United States disputes Plaintiffs' chronology. It asserts that the Tabor deed (Tabor 149/75) was recorded on June 22, 1869, prior to the issuance of the Tabor Condemnation (Tabor SC.142) on July 5, 1869. (Def.'s Reply at 7, ECF No. 84).

Here, the United States seeks to exclude Mr. Nordine's testimony on the grounds that certain Plaintiffs lack a cognizable property interest due to the alleged merger of estates. (Def.'s Mot. at 11–12). That argument, however, turns on disputed issues of fact and competing interpretations of historical instruments, including the sequence and legal effect of the Tabor deed and condemnation order. These disputes bear directly on the threshold question of property ownership and, in turn, the relevance of Mr. Nordine's valuation opinions. At this stage, the Court declines to resolve those factual and legal disputes in the context of a motion in limine. Because the admissibility of Mr. Nordine's testimony depends on determinations that remain disputed, exclusion is premature. Any deficiencies in the factual assumptions underlying his opinions are more appropriately addressed through cross-examination and the presentation of contrary evidence. Accordingly, the United States' Motion to exclude Mr. Nordine's testimony is **DENIED**. This, as with any unresolved evidentiary issue, requires a contemporaneous objection at trial.

Second, the United States argues that Mr. Nordine's testimony should be excluded as it relates to sixteen (16) of the Plaintiffs who have failed to establish an interest in the Beacon Line Corridor.[2] (Def.'s Mot. at 12–13). However, since the filing of the United States' Motion, none of

---

[2] The Plaintiffs, identified by their surnames, are listed as follows: Zanzarella, Abbasi, DeBonis, DeWitt, Durk, Ferris, Fero Kane, Kuran, Oken, Ott, Payne, Richard E. Monroe Trust, Schleicher, Tivnan, Valentino, and Van Vlack.

these Plaintiffs remain in this case.[3] Because these parties no longer present a case or controversy in this particular action following their dismissal or severance, this portion of the United States' Motion is **DENIED AS MOOT**.

Finally, the United States argues that the Court should exclude Mr. Nordine's testimony related to the market value of the taking because his opinion values a permanent easement as opposed to a temporary one. (Def.'s Mot. at 13–16). The United States also highlights that the Surface Transportation Board granted Metro-North's request for a second one-year extension of the Interim Trail Use Negotiation Period, which will expire on February 8, 2027. (*Id.*, Ex. 7 at 4, ECF No. 72-7). Plaintiffs argue that the taking is permanent because the railroad line has been effectively railbanked. (Pls.' Resp. at 18–23). Plaintiffs acknowledged that this Court has previously explained that a railbanking success requires a trail use request, a Notice of Interim Trail Use, and a railbanking agreement, and that failure to reach such an agreement may give rise only to a temporary taking. (*Id.* at 19 (citing *Hyatt v. United States*, 170 Fed. Cl. 417, 422–23 (2024))). Nonetheless, Plaintiffs argue that this case differs because "there is a near zero chance" that Metro-North will abandon the trail. (*Id.*).

The Court is not persuaded that the exclusion of Mr. Nordine's testimony is warranted. Although the United States argues, and Plaintiffs do not seem to dispute, that Mr. Nordine's report values a permanent taking, both parties acknowledge that, absent a finalized trail use agreement, the taking may ultimately be deemed temporary. (Def.'s Mot. at 14; Pls.' Resp. at 19). That legal determination, however, does not compel exclusion of the expert's testimony in its entirety. Rather, any deficiency in Mr. Nordine's report goes to the weight of his testimony, not its admissibility. It remains possible that Mr. Nordine can provide relevant valuation testimony tailored to a temporary taking, or that his existing analysis may assist the Court in determining an appropriate measure of compensation under the correct legal framework. Excluding his testimony at this juncture would therefore be premature, particularly where the nature and duration of the taking remain issues to be resolved.

Accordingly, the United States' Motion in Limine to exclude Mr. Nordine's valuation testimony is **DENIED**. The United States may renew its objections at trial, and the Court will assign appropriate weight to Mr. Nordine's opinions in light of the evidence presented and the applicable law.

In addition to the previously discussed motions, the parties filed a Joint Motion to suspend briefing of the Uniform Relocation Assistance and Real Property Acquisition Policies

---

[3] The Court issued Judgments for the following eleven Plaintiffs: (1) Zanzarella, Michael; (2) Abbasi, Firas; (3) DeWitt, Robert & Elisa; (4) Ferris, Scott & Diane; (5) Joette Forlsbolm Fero Kane 2018 Irrevocable Trust; (6) Kuran, David; (7) Oken, Catherine F.; (8) Ott, III, Anthony M. & Tracy; (9) Payne, Jason; (10) Tivnan, Richard; (11) Valentino, Judith. (*See* Rule 54(b) Judgments, ECF Nos. 80, 83, 90, 91, 94). Additionally, Plaintiffs: (1) DeBonis, James & Jean; (2) Durk, Arlene G.; (3) Monroe, Richard, in his capacity as Trustee of the Richard E. Monroe Trust; (4) Schleicher, Jessica; and (5) Van Vlack, Brian have been severed from this matter. (*See* Ord. Severing, ECF No. 98).

Act ("URA"), 42 U.S.C § 4654, until conclusion of trial. (ECF No. 101). That Motion is **GRANTED**. The parties shall file a Joint Status Report by **April 24, 2026**, advising the Court of how the parties wish to proceed and proposing a schedule if briefing is required.

      **IT IS SO ORDERED.**

s/    David A. Tapp
DAVID A. TAPP, Judge
